John J. Maxwell, et. al. ex'ors of Ann Pray, and John J. Maxwell, et. al. Trustees of Rebecca Knox's Children, vs. James H. Maxwell, et. al.

## In Equity.

A creditor is not *compelled* to join the legatees in a suit in equity, brought against the executor of the debtor; it is his *privilege*, not his *duty* to join them. The executor is to sustain the person of the testator, and to defend the estate for creditors and legatees.

And the fact that the estate has been distributed, and is in possession of the legatees, does not vary the rule.

A *creditor* having established his claim and obtained a decree against the estate of his debtor, authorising a levy upon said estate, in whosever hands it might be, will not be enjoined, at the instance of *specific legatees*, from proceeding against that portion of the estate in their hands, on the ground that the testator had set apart a particular portion of his estate for the payment of his debts. *Creditors* having superior claims to *volunteers*, cannot be embarrassed or retarded by such a provision.

### By ROBERT M. CHARLTON, Judge.

THIS is an application for an Injunction.

The bill states, that *John Pray* died, possessed of a large estate, which he disposed of by a very voluminous will; that by certain items in said will, he set apart and designated, an ample fund for the payment of all his debts, and that in various instances in said will, funds were particularly mentioned as given to legatees, if not required for the payment of debts : that the executors *John J. Maxwell* and *George M. Waters*, and the executrix *Ann Pray*, the widow of *John Pray*, took on themselves the administration of said estate, and caused legal notice to be given to all creditors, to present their demands ; that from the several funds designated for that purpose by said will, they paid all the debts of which they were apprised, and after satisfying the known demands against said estate, they surrendered and delivered to the respective specific devisees and legatees, the possession of their several devises and legacies, and paid over to the general and pecuniary legatees, the

amount of their legacies, which they would not have done, so far as concerned the legacies which were given on the condition, that they should not be wanted for the payment of debts, had they been aware that any other debts existed against said estate; that after such payment of debts, and distribution of legacies, the defendants, the heirs and legatees of *James B. Maxwell*, upon whose estate the said *John Pray* was executor in his life-time, notified the executors of the said *John Pray*, for the first time, that they had a claim against the estate of said *John Pray*, who, they alleged, was a defaulting executor, and had mismanaged and misapplied the funds belonging to the estate of said *James B. Maxwell;* that the executors of *John Pray* having answered that they had fully administered the estate of said *John Pray*, before such notice, a bill was filed by the present defendants against said executors, and answers having been put in, such proceedings were had on said bill and pleadings, that a verdict or decree was rendered in favor of the present defendants, (then complainants,) " for the sum of twelve thousand dollars, payab'e out of any assets which may hereafter come to the defendants' hands, or out of the estate of *John Pray*, which has been delivered over to his legatees or devisees by the defendants. We find that the defendants have fully administered the estate of *John Pray*, so far as the same came to their hands, by the delivery thereof to his devisees and legatees ; and we further decree that the complainants have leave to take out execution for the enforcement of this decree, and to levy the same on the estate, real and personal, which was of the estate of *John Pray*, at the time of his death." That judgment having been rendered on said decree, execution was taken out, and delivered to *John I. Dews*, Sheriff of Chatham county, who proceeded to levy the same on certain lots, which had been specifically devised by said *John Pray* to Mrs. *Ann Pray*, his widow, (of whom the complainants are executors,) and the children of Mrs. *Rebecca Knox*, (for whom the complainants are trustees,) the said *Ann Pray*, and the said children of Mrs. *Rebecca Knox*, having been the especial objects

of testator's bounty and regard, and the legacies given to them having been specific and unconditional, and not charged in any event with the payment of his debts. The prayer of the bill is, that the defendants may be compelled to resort to the legatees, whose legacies have been charged with the payment of debts, or that they may be compelled to resort to all the legatees of the said *John Pray*, if all are liable, and that in the mean time, an injunction may be awarded, to restrain the defendants from the sale of said lots, or either of them, and for further relief.

The cause has been argued at the bar at length, and with great ingenuity and ability. Many reasons are urged upon the Court for restraining the defendant from proceeding in the present levy. In the first place, it is said, that it is a general rule of Equity, that all parties in interest, must be parties to the suit; that a Court will not make a decree to affect the interests of parties not before it; that such a decree is void so far as concerns such parties, because the Court has no jurisdiction in relation to their rights, and because a decree against persons not parties, is considered an imposition and fraud upon the Court; that if the present complainants had been made parties to the suit instituted by the present defendants, in *Bryan* Superior Court, against the executors of *John Pray*, the complainants could easily have shown, that the legatees, whose legacies were charged with the payment of debts, if necessary, were first to respond to the defendants' demands, and that it would be unjust and inequitable to suffer the property held in trust by complainants, to be taken for the satisfaction of said judgment, without having given them an opportunity of being heard in defence of their rights.

The proposition, that you must have before the Court, all parties whose interests the decree may touch, is undoubtedly true, as a general rule. But it is not of universal application ; it has exceptions, amongst the most settled of which are, the cases of creditors and legatees ; the executor is to sustain the person of the testator,

and to defend the estate for creditors and legatees. (1 *Ves. Sr.* 105. 1 *John.* Ch. Rep 438. 2 *Mad.* Ch. 152. 1 *M'Cord's* Ch. Rep. 324, 2 Ibid .435. 3 *John.* Ch. Rep. 555, 6.) It is not doubted, that in a suit by a creditor, the legatees *may* be joined with the executor in certain cases, (and perhaps in all,) but the question before me, is whethei such legatees *must* be joined, and the authorities bear me out in asserting that such is not the law.

But it is attempted to carve an exception out of this exception. It is said by the counsel for complainants, that the reason why the executor is alone the necessary party to a suit by creditors, is because the legal estate is in him—the possession is with him, and so long as these continue to abide with him, he may alone be made the party, but that when the estate has passed from him, by the fulfilment of his trust, and the legal estate has vested in the legatees, by the assent of the executor, who has thus "denuded" himself at once of the title and possession, *cessante ratione legis, cessat ipsa lex;* he no longer ought to be made the sole defender of such suits. The legatees, who hold the legal estate and the possession, and whose rights may be materially affected by the decree, ought to, and must be joined.

I can find no such distinction in the books. The executor sustains the person of the testator, and so long as he continues to act as such, and has not been discharged by the proper tribunal, he is to defend the estate. His assent to legacies has not divested or denuded him of his representative capacity. That assent is simply an admission, that there are assets in hands, sufficient to satisfy all known debts; it does not take away from him his character as trustee for all interested under the will; if after assent and delivery of a legacy, other debts are discovered, of which he had no previous notice, he may compel the legatees to refund, and the legatees are as much interested in the question, whilst the estate is in his possession, as after it has passed into their hands. If it is

PART II.—H. 3.

necessary to make them parties in the latter case, why not in the first? And in relation to the fact, that the legatees had possessed themselves of their respective legacies, with the assent of the exe-cutor, and had thereby acquired the legal estate, (as it is said in argument,) it must be obvious, that such possession, even with the assent of the proper representative of the estate, cannot take away the rights of creditors, claiming *ex debito*—such legacies cannot be held by a better title, or by greater exemptions, than whilst they remained the estate of the testator ; so far as creditors are concerned, they are liable to the debts of testator. " The title of an heir to the estate of an ancestor, or a devisee in an estate unconditionally devised to him, is upon the death of the party under whom he claimed, immediately devolved upon him, and he acquires a vested estate. But this, though true in a general sense, still leaves his title incumbered with all the liens which have been created by the party in his life-time, or by the law at his decease. It is not an unqualified, though it be a vested interest; and it confers no title, except to what remains after every such lien is discharged." Such is the language of the Supreme Court of the United States, in the case of *Wilkinson* vs. *Leland*, et. al. 2 Pet. Rep. 658—and it is the undoubted language of reason and the law. I am therefore of opinion, that the legatees, in the suit in *Bryan* Superior Court, ought not necessarily, to have been made parties, in any other manner than they were so made, through the executors, who were appointed to sustain the person of the testator, and to act ast rustees, for all interested under his will.

But other reasons are assigned for the granting of this injunction. It is asserted in argument, (and indeed alleged in the bill,) that the demand of the present defendants, upon which the decree in their favor was obtained, in the Equity side of the *Bryan* Superior Court, was a stale demand—that the defendants stood by silently, in the life-time of *John Pray*, and for many years after his death, without asserting any demand against said *John Pray*, or his estate,

[Maxwell, et. al. vs. Maxwell, et. al.]

and without any complaint, that he had acted fraudulently in regard to the estate of their testator, *James B. Maxwell*, of whom he was executor; that all the confusion and litigation has been thus produced by the laches of defendants, since, had their claim been advanced, before such estate of *John Pray* was distributed, their demand would have been satisfied with the fund and the legacies, set apart and designated by the testator, for the payment of his debts; that the individuals represen'ed by complainants in this bill, were specific legatees, the especial objects of the bounty of testator, and that a Court of Equity should aid in carrying into effect the intentions of a testator, and ought, therefore, in this case, to compel the defendants to proceed with their judgment against that portion of the estate of *John Pray*, which had been made subject by him to the payment of debts, and was the primary fund for such purpose, or to force them to seek contribution from the estate generally, and not allow them to take advantage of complainants, who have been brought into the difficulty, through the wrongful negligence of the present defendants.

I may not take into consideration, in the determination of this application, the allegation, that the demand of the present defendants was a stale one. I cannot judicially know it. I cannot presume, that a Court of Equity, and a Jury sworn to determine according to equity, and the opinion they entertained of the evidence, would grant a decree, based upon a claim barred by the statute of limitations, or rather by that length by time, adopted as a bar by Courts of Equity, in analogy with the provisions of that statute. I am bound to believe, that the delay of defendants was satisfactorily accounted for, and that they were laboring under some disability, such as infancy or coverture, which formed a sufficient excuse for their apparent laches. I am constrained the more to believe this, from the fact, that no application was presented for a re-hearing of the cause, and no effort made to reverse the decree by such proceeding. I must take this case as I find it, as the decree of a Court

of competent jurisdiction, having a binding effect, and being a lien on the estate of *John Pray*, both real and personal, according to the law of the land. This brings me to the consideration of the question, whether I can exercise the equitable powers of this Court, by interfering with the rights of defendants under such decree, and by compelling them to resort to a particular portion of the estate of *John Pray*, or of seeking contribution from all his legatees, in order that the specific legacies devised to those represented by complainants, may be relieved from the operation of the lien created by such decree.

It will be kept in mind, that the parties to the bill do not stand in *æquali jure;* that the claimants are *volunteers*, claiming (as it is properly said at the bar,) *ex gratia;* whilst the defendants claim *ex debito justitiæ;* that in truth they are not only creditors, but in the highest class of creditors, having a right to priority, before debts due to the public, or judgments, or any other debt of such testator, save perhaps the funeral expenses, and other expenses of last sick-ness, and the charges of probate of will. A Court of Equity will pause before it controls a judgment, in the hands of such creditors, or enjoins them from proceeding against a particular portion of the estate of such defaulting testator, merely because he had prescribed what portions of his estate should be primarily liable to the pay-ment of his debts. A Court of Equity will often interfere between parties claiming in equal right, and will cause the assets to be mar-shalled in aid of one creditor, where the equity of the case seems to require it, and where no injustice can be done to another credi-tor by the proceeding. So may assets be marshalled as between volunteers in certain cases. But has the rule been extended be-yond this? Can a case be produced at all analogous to this, where a Court exercising equitable powers, has interfered at the instance of a *legatee*, to restrain a *creditor*, one high in right to priority of payment, from proceeding against any portion of an estate, subject to his lien? If such a case has existed, and such a power been ex-

ercised, it has escaped the industry of counsel, and I must confess, my own research. The very foundation of the rule of marshalling assets, is hostile to the assertion of such a power. It is said to be a rule founded in natural justice—and is it just that a creditor should be delayed, should be prevented from the collection of his demand, (in this case, his lien,) upon the estate of his debtor, simply because such debtor has designated a particular fund for the payment of his debts? I cannot yield my assent to such a proposition. As between those claiming under his bounty, it would be proper that his directions, as to the disposition of his estate, should be enforced—but a man must be just before he is generous, and no directions that he may give, ought, or can, embarrass for one moment, those who have legal rights or claims against him or his estate. In the absence of all authority, my own convictions would lead me to this conclusion, but fortunately for myself, I am not compelled to resort to my own impressions alone. I find a case determined by his Honor Judge *Law*, on the Equity side of this Court, which upholds the idea I have taken of this matter, and seems to me to cover the whole ground of this controversy. I allude to the case of *M'Lellan* and *wife*, complainants, and *Wallace*, administrator, and the *Marine and Fire Insurance Bank*, defendants. In that case, *James H. M'Leran* executed a mortgage upon land and negroes, to the *M. & F. I. Bank*, and died intestate, leaving his next of kin aliens, and more remote kindred, citizens. The *Bank* being about to foreclose its mortgage against the real estate, the complainants who were citizens, (further removed in blood than the alien heirs, who were supposed to be the inheritors of the personal estate,) filed a bill, to enjoin the Bank from proceeding to collect its debt from the sale of the lands, on the ground, that the personal estate was the primary fund for the payment of debts, and that the complainants were entitled to have the real estate exhonerated from the incumbrance of the mortgage. The Court admitting, for the purposes of the motion, the (contested) point, that the personal estate in Georgia, was the primary fund for the

payment of debts, and as its consequence, the equity on the part of the heir and devisee, to have an incumbrance upon the real estate removed, proceeds to observe, "The important inquiry is, to what extent does that equity exist? I apprehend it is confined as between the heir or devisee, and the residuary legatee, or general personal estate. The authorities do not sanction the extension of the principle to specific or pecuniary legatees, or to a case *in which the rights or interests of creditors are concerned.*" In support of such assertion, he cites 1 *Mad.* Ch. 624. 2 *Fonbl.* 293, note 2. *Vern.* 477. 2 *Ves. jr.* 65—and he adds, that in the latter case, the Lord Chancellor says, "The equity afforded to a person entitled to real estate by devise, to have the incumbrances on it discharged, as a debt out of the personal estate, can go no farther than this, as between the heir or devise of the estate, and the residuary legatee; it cannot interfere with the disposition of other parts, as specific or general legacies, much less with the interests of creditors." His Honor, Judge *Law,* adds "It does not appear to me, upon any principle to be extracted from this rule, or from any precedent which the case affords, that in a question of right, between two different sets of heirs, the one excluded from the real estate, because an alien, but interested in the personal, the rule could be made to apply *to a creditor,* pending his lien upon the real estate."*

I have been thus particular in adverting to this decision, because it proceeds from one of my predecessors, and is entitled to great respect. I repeat, that it covers the whole ground of this controversy. In that case, as in this, an effort was made by an individual, entitled to that portion of the estate, not primarily liable to the payment of debts, (as was conceded for the purpose of the decision,) to compel a creditor having (as here) a lien on the whole estate, to resort to that portion, which was first to be applied to discharge the debts; but the Court refused to interfere with him,

---

* See the case reported in *Dudley's* (Ga.) Rep. p. 127.—(*Ed.*)

alleging that it was properly a question between the heirs them-
selves, and to be determined in a suit between them, and with
which determination, a creditor having a lien on the whole estate,
had nothing to do. I am asked to remember, that in the case of *M'Le-
ran*, the estate remained undistributed in the hands of the adminis-
trator, whilst in the present case, it has been delivered to the lega-
tees.   In discussing a previous point, I expressed the opinion that
this did not vary the case, and in reference to the ground we are
now going over, it cannot possibly affect the principle upon which
the case, I have just been stating, was determined.   The princi-
ple decided there was, as I have already mentioned, that a creditor
could not be interrupted in prosecuting his legal demands, by the
equity existing between heirs.   If the prayer for injunction had
been granted in that instance, the creditor would have been com-
pelled to resort to the fund primarily liable, and the favored heir
would have had his property relieved.   And such would be the re-
sult in the present case, if the injunction should be awarded ; and
the refusal of the Court, in *M'Leran's* case, drove him, (as it will
necessarily do these complainants,) to resort to his equity against
his co-heirs, in a suit between them.   The analogy of the cases is
perfect, and no one who will look with attention to the case deter-
mined by Judge *Law*, and the principles upon which that determi-
nation rested, can suppose for a moment, that if the administrator
had delivered over the property te the heirs, in ignorance of the
lien of the *Bank*, and that the *Bank* had subsequently proceeded
to foreclose its mortgage, the Court would have done otherwise
than it did, or that it would have granted the injunction.

It is needless to pursue this subject further, or to determine the
point raised in reference to a bill of review.   It may be observed,
however, that this is neither a bill of review, nor a supplemental
bill in the nature of it, which agrees with the former in all res-
pects, except in the enrollment.   This is not based upon any alle-
gation of the discovery of matters of fact which could not possibly

have been used at the time the original decree passed, nor does it allege that such decree has been obeyed, or shew the inability of the complainants to obey it; on the contrary, it seeks to enjoin defendants from enforcing it, a proceeding not consistent with a bill of review; and looking on this bill in the light of an original one, and admitting that a bill of that nature may be exhibited in this Court for the purpose of impeaching and setting aside a decree obtained by fraud or imposition, still this will not avail the complainants, as I can find no evidence of imposition or fraud practised by defendants in obtaining their decree: and in reference to the argument that the decree is inconsistent, since it declares in one line, that the executors of *John Pray* had fully and properly administered the estate, and in the next, gives leave to the then complainants, to enforce the decree against such estate, in the hands of the legatees, it may be remarked, that a case may well occur, in which the executors, having acted in ignorance of an existing debt, had distributed the estate, after waiting the legal time, should be protected from liability, and yet, that such debt, not being barred or extinguished, might be enforced against the estate liable to it, and it may be doubted, whether the leave granted by such decree, to the present defendants, (then the complainants,) to enforce such decree against all the estate of *John Pray,* in the hands of his legatees, or wherever it could be found, was necessary to confer that right, since the rule of Court says, that " when a case in Equity shall be tried by a Jury, who shall render a judgment for a specific sum, a decree shall be entered for such sum, and such execution may be issued thereon, as if the case had been decided at common law."

I have examined all the cases cited in argument, and have made diligent search for others, with the anxious desire to relieve the complainants, and to carry into effect the intentions of the testator, if this could be done without interfering with the superior claims of others; but upon mature reflection, I am convinced, that I cannot

grant relief, without overturning principles as old as the hills, and disregarding the well defined boundaries, between the rights and claims of creditors and legatees.

I am constrained, therefore, to deny the prayer for Injunction, and to discharge the rule.

Messrs. LAW, GORDON & M'ALLISTER, for the complainants—Messrs. BERRIEN & CUYLER, for the defendants.